We're now going to move to case number 8, 19-1579 Lutes v. United Trailers, Inc. And we'll first hear from Mr. Ulmer. Good morning, Your Honors. Good morning. As it may please the Court, I am John William Ulmer. I represent Brandi Lutes, who has been appointed the representative of Buddy Phillips' estate. This, as the Court is well aware, is an FMLA violation, family medical leave issue. To kind of recap this, Mr. Phillips was injured while playing with his grandchildren prior to the Fourth of July holiday, 2015. At a point in time, he was taken to the hospital, where x-rays were performed, and it was determined that he had a fractured rib. As the company policy requires any employee, they have to notify the company if they're going to be late for work. They have a certain number they have to call in and advise the company. Mr. Phillips followed that policy. He called the company, in this case, United Trailers. United Trailers acknowledged they received a phone call and wrote down that the injury that he had sustained was a broken rib. Having that knowledge, under the Medical Family Leave Act, they had five days then to provide notice to Mr. Phillips whether or not his injury arose to FMLA standards, where he would be qualified for FMLA. Five days. They did nothing. Hold on. Based upon that phone call just reporting the rib injury? Right. That's correct. And would your position be the same if he called in and said, I sprained my ankle playing basketball last night? No, Your Honor. Okay. Why? Because I don't think that would be an injury which would trigger an FMLA notice to the employee. That's a sprained ankle. Given the type of job that that person did, we have to take all those things into consideration to determine whether or not a sprained ankle would be something that would inhibit his functioning at his chosen profession. Mr. Phillips was a trimmer in the RV industry, which required him to climb up ladders, to lift items as he was helping manufacture the items for United Trailer Ground. I wouldn't say that a sprained ankle would trigger that. So your point is just based upon the substance of the information conveyed in that call-in that he or his wife made, that that triggered the obligation on the employer's part? That is correct. That would be described as the first part of that roadmap for the FMLA. One is that he had to qualify, and the company was covered by FMLA, which it was, and it was not disputed by either side that United Trailer was not covered by FMLA. The thing that I think was at issue was, was that notice sufficient? Given another hypothetical, he didn't call in that day and said he had a headache. And the company quite well knew what his responsibilities were to their production line, what his job description was. Now, a broken rib is not something minor. We're not going to get up the next day and go back to work, typically, if you have a broken rib. Mr. Phillips then continued to call in to notify the company. Now, the issue is there was a period of time where it was three days that he didn't call in to the hotline that he was required to call in to, and he didn't show because he was injured. And so when he went back to work, taking with him his doctor's excuse from Dr. Berardi, he was terminated. Now, somehow they've got some confusion in there. They say that they sent Mr. Phillips' notice to his home that he was terminated, but that wasn't the case. He never received anything prior to him going into work with his medical excuse. At that point, that's when he was made aware that he no longer had a job at United Trailers, a place that he worked for 13 years. Does the record reveal how many employees are at United Trailers, at his location? Yes. The records reflect they had 150 employees at that particular facility.  So, of course, when he goes back home, he tells his wife, I've been let go. And that started this whole situation because it's my intention that once he gave them notice, they had a duty. Now, they want this court to say, well, we're not going to look at the responsibility for United Trailers. We just want you to focus on the fact that he didn't call in for three days, and by the policy of the company, the handbook that he acknowledged that he signed, that he was aware that no call in, no show, that's an indication that you decided to resign from the company. Yeah, that position, though, is one. I mean, they're not making that up, right? Right. That's in their handbook. That's correct, Your Honor. And it finds some footing in the regulation, does it not? It does. And our prior decision in that Riggie case. But, however, the crux of this matter is if that notice was sufficient, then he falls under FMLA. He gave a notice. FMLA itself doesn't require a continual call in. That's enough notice for the company to know that that person is injured. So he's not going to be continually calling in every day. The policy was that if he was calling in, as you rightfully said early on, say, I got a sprained ankle, okay, or I got a headache. That is really the crux of their call in policy 15 minutes before your shift. Not when someone calls in and puts them on notice that I'm dealing with a serious health condition that inhibited my ability to do my essential function of the job. Yeah, the calls weren't like that, though, right? The calls were more limited to just, I don't know, like a rib or rib problem or something. Right. It wasn't an extended discussion with someone in HR explaining what happened and how he's having trouble getting around and there's no way he can work. Right, and that is because they have just a call in system. It's actually an answer machine. Right. So when the employee called in, they get an automatic answer machine. They say, hey, I'm calling in because of whatever reason and stuff like this. And then later on, my understanding of how it worked, the secretary then transcribed what she takes down from the answer machine and then passed that on to HR. Did you want to reserve some time for rebuttal? Yes, I do, Your Honor. Very good. Thank you. We'll now move to counsel for the appellee, Mr. Palmer. Good morning, Your Honors. May it please the court. My name is Mike Palmer. I represent United Trailer, the appellee in this case. Your Honors, Mr. Phillips' estate cannot make the district court's holding or Seventh Circuit precedent go away by simply ignoring it. The district court held that employers like United Trailer do not violate the Family and Medical Leave Act by enforcing their usual call-off and no-call, no-show policies. And that holding is well established under Seventh Circuit precedent. Seventh Circuit precedent teaches us that even if an employee is covered by the Family and Medical Leave Act, he may not keep his employer in the dark regarding the duration of that leave. Decisions like Lewis, Gillum, Brown, Riggi all cited in our brief establish that point of view. So it's clear that a call-off process may be enforced without violating the Family and Medical Leave Act, even if the employee is covered by the FMLA. The undisputed facts establish here that the company had a no-call, no-show policy that essentially stated if an employee is absent without calling in for three days, he's effectively resigned his position. The company also had a strict call-off process that the employee was required to call off 15 minutes before each shift. Now, Mr. Phillips was absent from July 6th through the July 23rd, 2015. He was absent nearly three weeks, 13 workdays, and he only called off five times. These facts are undisputed. He did not call off at all the last week he was absent. So July 20th through the 23rd, four days, he never called off. Those policies were triggered, justifying his termination. And the district court held that enforcing those policies did not violate the Family and Medical Leave Act. Now, Mr. Phillips' estate ignores that holding in its opening brief and essentially ignores it here at oral argument today. Didn't address it, didn't distinguish any of those decisions at the summary judgment stage, effectively waiving any argument to the contrary. This issue is dispositive and should result in the court affirming the district court's summary judgment order. Now, opposing counsel raises an argument about the alleged noncompliance with the FMLA notice requirements, the employer's notice requirements. This argument does not address the holding of the district court, which essentially was that the no-call, enforcing the no-call, no-show policy and the call-off policy does not violate the Family and Medical Leave Act. So it's really a new claim. It's a claim that somehow the company interfered with Mr. Phillips' FMLA rights by not complying with the certification process under the Family and Medical Leave Act. Mr. Palmer, let me ask you a legal question that's not – that will help – I think it will help my understanding of this. It's not related to the facts of this case at all, so just set the facts entirely aside and then we can come back to them. Okay? Okay. So it seems in looking at 825.301A, which embodies the employer's responsibility, that an employer at some point comes under an obligation to provide information about FMLA leave, just plain from the face of it. That's abundantly clear. The question I have is when does that obligation kick in? So that is the more formal certification process. And I would argue that that regulation does not apply in this situation because what we have here is really a notice for – No, no, no. Forget this situation. Okay. Okay? It just says once the employer has acquired knowledge that leave is being taken for FMLA qualifying reason, the employer must notify the employee as provided in 300D. Okay? So it seems, in fairness to your adversary's position, it does seem that it's somewhat fact and circumstance dependent. And what I mean by that is a telephone call that says, I sprained my ankle playing basketball. I could see an employer saying, well, all right, maybe he's going to be back, you know, on Friday morning. That's a lot different than, you know, I fell off a ladder cleaning out my gutters and cracked two vertebrae. In that situation, it seems like HR might pretty quickly get the FMLA leave letter together. So what I'm trying to understand as a legal matter is when does the obligation in A kick in? When there's a clear request for a Family and Medical Leave Act or when a situation clearly encompasses – Hold on. I don't know. Have you used the term Family Leave Act? I'm sorry. What's that? The employee, he has to use the term? No. I think that when the employer has put clearly on notice that a request for leave is encompassed by the Family and Medical Leave Act, then that would kick in the certification process. There's an informal obligation to investigate unclear requests for whether or not something is unclear that implicates the Family and Medical Leave Act. So it's the – Judge Bauer is right, though. I mean, right behind that regulation in B, it says the employee giving notice doesn't have to assert rights under the act or even mention the act. So the broader question is how does 301A – how does it interface with the provision you're relying upon, 303C? 303C – You're standing on 303C because you're saying an employer can have this kind of call – you've got to call the call-in center. That's a legitimate policy. See RIGI. See the regulations, et cetera, et cetera. That's your argument, right? But the case implicates the intersection, does it not, of 303C and 301A. How do they work together? When there's a clear implication of the Family and Medical Leave Act. And in this situation, there was not a clear implication of the Family and Medical Leave Act. The RIGI decision is an example of that where the notice provided – So the guy that calls in and says, I fell off a ladder, is that enough? Is that enough? If I crack two vertebrae, I fell off a ladder, I'm in bad shape, I'm not going to be in any time soon. I don't believe that that would be enough. I believe that – Seriously? And what more do you want him to say? So if it's a clear implication of the Family and Medical Leave Act, would that be a clear – No, no, no. Judge Bauer, you don't have to say this. I don't know what the statute – if the guy says, I don't know what the statute's called, but there's some law out there somewhere that deals with leave. I just fell off my ladder. I ain't going anywhere for a while. In fact, I'm in the hospital. Right. Then that would be a clear implication of the Family and Medical Leave Act. Okay. So HR would get the letter out the door? That would – if there is information that was not provided that they needed to – I'm actually putting a hypothetical out there because I think it's just simple. I mean, a guy that calls in and says, I fell off a ladder, I can't come to work. I mean, that just seems heartland, 301A. That there is a clear implication of the Family and Medical Leave Act. He didn't say it. He didn't reference the Family and Medical Leave Act, but his injuries give rise. Sure, he doesn't know about it. Right. His injuries give rise, indicate that the Family and Medical Leave Act has been implicated. I agree that if it has – The employer, I'm sure, knows the act. The employer knows the act. Yeah. Yes, that's right. And the employee is not considered to be knowledgeable in that subject. I agree. In other words, I agree that they do not need to reference the Family and Medical Leave Act statute. They don't even have to use that or even discuss it. That's right.  I fell and I hurt. That's right. That will do it, won't it? Well, I fell and I'm hurt is probably not enough. Why? Because it doesn't clearly implicate that the person has a serious health condition, which would trigger the Family and Medical Leave Act. I said I fell off a ladder. I broke my ribs. I can't move. That would be closer to the line. That would be closer to the line where you have to go through the certification process or some informal means of gathering additional information. I think the reason we're asking – Well, the employer needs to know whether or not it is, in fact, a serious health condition. And secondly, what is the duration of the leave? In this situation, the employer never knew what the duration of the leave was. I think the reason I'm asking you the question, and maybe perhaps Judge Bauer too, is the issue is – Mr. Allmer is kind of framing it up in substance – is this closer to the basketball sprained ankle? Or the guy falling off the ladder? And the very fact that we're having a hard time sorting it out, I think his point is that's precisely why you need a trial. And this point goes to whether or not Mr. Phillips was entitled to Family and Medical Leave. Yeah, I think his argument – I mean, he can correct me if I'm wrong. I can't state it for him. But I understood his brief to be saying, this guy did enough to trigger the employer's 301A obligation. And whether or not he would be entitled to Family and Medical Leave Act is one issue. And the district court agreed with Mr. Allmer and said he did enough to trigger the Family and Medical Leave Act entitlement. But he still loses because the employer has a right to know how long a leave is going to last. And has a right to enforce its so-called no-show policy as well as its call-off policy. And that's what happened here, and that's why he was terminated. And that's the issue that's not being addressed by Mr. Phillips' state. And that issue is dispositive of this case. When this complaint triggered or questioned by the employer, how long are you going to be gone? They have a call-off process for that very purpose. They're expected to call in every day to indicate when will they return to work. And Mr. Phillips didn't do that. He didn't even do it after he received the doctor's notice indicating that he was going to be off of work from July 15th through the 31st. He didn't give that doctor's note to... So I don't want to take up too much. Let me just ask you this. So suppose the guy who fell off the ladder and cracked his vertebrae, okay, that you have the HR department saying, hey, look, he's going to screw up. Wait three consecutive days when he fails to call in and fire him. In that situation, the regulation that you're relying upon, 303C, could operate to defeat 301A. That's what concerns me. I know we're not dealing with that fact pattern here, right, but it just can't be. I don't think that an employer could game an employee, wait for a foot fault, can him, and then say, well, you didn't call the call center. Both under the regulation 302 and 303, the obligation of notifying the employer is not only of the potential serious health condition, but is also the duration of the leave. That's the employee's obligation. No, I know, but if the employer says, don't send out the FMLA letter, don't send the letter out, wait for him to screw the notice up, and then fire him. Even in a situation where an employee has received the certification letter, I mean, under these decisions, Lewis, Riggi, they've assumed that the FMLA applied, that those absences were covered. An employer still has a right to enforce its no-call motion. No matter what. Especially when a leave is indefinite in nature. Thank you, Your Honors. Thank you. We'll now move back to Mr. Allmar for rebuttal time. Thank you, Your Honors. This will be very brief, and I really was listening to the questions that this court had of the active leave. I had those same concerns myself. Because once that employee does make that phone call, and not calling in to say that my stomach is aching today, not calling in to say I had a headache, I would agree that that policy that they need to call in every day is sufficient. And if they violate it, they are rightfully terminated. However, when the employee calls in to advise the company of a serious health issue, that's going to inhibit their ability to do their job. Then it flows to the employer to provide them notice about FMLA. And at that same time, they also can provide them the certification, the medical certification, they can take back to their doctor, get more information to give back to their employee. That is one of the things that is the safeguard for both the act of the employee as well as the employer. So both of them are on equal footing. But the employee is not on equal footing if they don't get the notice from the company when they made them aware of a serious health condition, Your Honors. Thank you, Mr. Allmar. Thank you, Mr. Palmer. The case will be taken under advisement.